NORRIS v. HALL.

1. APPEAL—FINDINGS OF FACT—CONCLUSIVENESS.
The court's findings of fact in a case tried without a jury are conclusive on appeal, where the evidence is not returned.

2. TAX SALES—DEEDS—EVIDENCE.
Act No. 7, Pub. Acts 1882, providing for a clearance sale of State tax lands, did not declare that the deeds issued thereunder should be *prima facie* evidence of title, and hence such deeds are inadmissible in evidence in the absence of proof of the regularity of the tax proceedings.

3. SAME—PROSPECTIVE STATUTE.
A tax deed based upon a sale under the tax law of 1885 (Act No. 153), for taxes assessed prior to the passage of that act, is void, since the act was not retroactive.

4. SAME—VALIDITY OF DECREE—DOLLAR MARK.
A tax deed issued under the law of 1889 (Act No. 195) is void where the tax record contains no words or dollar mark to indicate the amount decreed against the lands.

5. EVIDENCE—ANCIENT DOCUMENTS—RECITALS.
Recitals of the death of a party, in conveyances and court records of 50 years' standing, are evidence of the fact, even as against strangers.

6. EJECTMENT—TITLE—BURDEN OF PROOF—POWER OF ATTORNEY.
Plaintiff in ejectment, claiming under a deed by an attorney-in-fact authorized to convey the premises in suit "excepting such parcels as may have been heretofore conveyed," makes a *prima facie* case by the introduction of deeds covering the entire premises; the burden of proving any former conveyances by plaintiff's grantor resting upon the defense.

7. JOINT TENANCY—SURVIVORSHIP—TRUSTS.

  The right of survivorship incident to an estate of joint
  tenancy is not defeated by the fact that, by agreement entered
  into contemporaneously with the execution of the deed
  creating such estate, the grantees were declared to hold the
  lands as trustees for a joint stock association, charged with
  the duty of selling the same and distributing the proceeds,
  and were authorized to appoint a successor in case of the
  death of one of their number; and hence a conveyance exe-
  cuted by the survivors of them will pass title to the lands.

8. TRUSTS AND TRUSTEES—POWER TO CONVEY LANDS—REGULARITY
OF EXECUTION.

  The regularity of the execution by trustees of a power to sell
  and convey lands cannot be questioned by one claiming
  adversely to the *cestui que trust.*

Error to Berrien; Coolidge, J. Submitted April 5,
1900. Decided May 15, 1900.

Ejectment by Mark Norris against Charles W. Hall and
others. From a judgment for plaintiff, defendant Hall
brings error. Affirmed.

This is an action of ejectment, was tried before the court
without a jury, a finding of facts and law made, and judg-
ment entered for the plaintiff. Plaintiff claimed title
from the government. Defendants claimed title by cer-
tain tax deeds and adverse possession thereunder; that, if
plaintiff held any title, he held it in trust for defendant
Hall, and that he had obtained it while acting as his
agent. The other defendants are tenants of Hall. By
*mesne* conveyances from the government the title became
vested, April 9, 1836, in one Henry H. Casey. Casey
platted this and other lands as the town of North St.
Joseph on May 26, 1836. On March 24, 1838, Casey con-
veyed to Dunbar S. Dyson by government subdivision.
March 26, 1838, Dyson conveyed to five persons, named
Russell, Oakley, Allsop, Jr., Casey, and Sterne, as joint
tenants. These five parties executed an agreement the
same date as the last conveyance, reciting that Casey was
trustee; that the object of the conveyance to Dyson and of

Dyson to the five joint tenants was to vest the title in said joint tenants in fee simple absolute, in joint tenancy, as trustees; which agreement recited that they held said land in trust, according to certain articles of association set forth in said agreement; that the interests of all parties were to be confined to the net proceeds of the sale and disposition of the land. The articles of association were signed by the various stockholders, and recited the amount of stock held and owned by each. Such interests were to be personalty, and to pass to the personal representatives, and not to the heirs, of any of the *cestuis que trustent* who should die, and no heir at law of any of the parties should at any time claim any estate, title, or interest, legal or equitable, in the land. The capital stock was $300,000. The trustees were to manage the capital, property, affairs, and concerns of the association; to donate any of the trust lands, if, in their judgment, the affairs of the association would be benefited thereby; to carry out contracts previously made by Mr. Casey; to improve and lease the lands until sold, and to sell lands at times, in such manner and upon such terms as they saw fit; to elect officers, make investments, appoint such agents as might be necessary or useful, and to appoint one or more of the trustees agents to sign and execute conveyances. They were to sell the entire land within five years, if practicable. If found to be impracticable, then, within the following three years, they were "to take such measures as may be necessary to effect that object," and at the expiration of the eight years divide all moneys, property, and estate of the association ratably among the several stockholders. They were to commence and carry on all proper and necessary suits; to defend all suits; to make all lawful contracts and to do all lawful acts that might be necessary and proper to carry into effect the object of the association. It was also provided that "the conveyances of the tracts of land, or any part thereof, executed by the trustees in person, or in the manner hereinafter stated, shall pass to the purchaser or purchasers thereof the whole

legal estate thereof, with guaranties of interests as shall be thereby intended so to be granted." Article 17 reads:

"Upon the happening of any vacancy in the board of trustees, the remaining trustees shall supply such vacancy from among the stockholders having the requisite number of shares; and, upon the appointment of any new trustee, the other trustees shall convey an interest in the property of the association by such instrument in writing as counsel shall advise, so as to make him a joint tenant thereof equal with themselves."

The trustees were further authorized to make by-laws, rules, and regulations for the management of the property.

In three documents, executed, respectively, May 9, March 25, and February 10, 1846, the death of trustee Sterne was recited. These documents also recited that, by the death of Sterne, the entire title to the lands in question passed to the survivors by right of their joint tenancy. On February 10, 1846, the four surviving trustees executed a power of attorney, reciting the death of Sterne, to Cyrus W. Dana, to sell and convey the land. The eight years had nearly expired, and a sale had become mandatory under the trust. On March 25, 1846, the trustees, by Mr. Dana, their attorney, and in pursuance of the agreement, conveyed the land in question to Charles R. Allsop. After the death of Sterne,—but the precise date does not appear,—the survivors caused a portion of the plat of North St. Joseph, including the premises in question, to be vacated. Mr. Allsop died intestate March 5, 1865. In 1892 his widow and heirs conveyed to the plaintiff.

Defendants introduced a tax deed for the taxes of 1869 to 1880, inclusive; also a tax deed of 1882, one for 1883, one for 1887, and one for 1888; and gave evidence of adverse possession. Plaintiff gave evidence controverting the claim of adverse possession. Upon the tax deeds the court found as follows:

"I find that for the delinquent taxes of the years 1869 to 1880, inclusive, public sale was made May 4, 1884, un-

der the law of 1882. The deeds executed by the auditor general upon the sale made May 4, 1884, are introduced in evidence by defendants. I find as matter of law that all sales made on May 4, 1884, under the law of 1882, are invalid; that the tax deeds for the years extending from 1869 to 1880, inclusive, were made pursuant to a sale on May 4, 1884, under the law of 1882, and, consequently, that they are invalid.

"I find that the tax deeds of 1882 and 1883 introduced by defendants were void, because the sales were made under the law of 1885, and that the act of 1885 was not retroactive.

"I find that the tax deeds of 1886 and 1887 introduced by defendants were void, because the tax decree shows no dollar mark in connection with the description of the lands and the taxes assessed and to be collected thereon."

*Samuel H. Kelley* and *Edward Bacon*, for appellant.

*Lawrence C. Fyfe* (*Mark Norris*, of counsel), for appellee.

GRANT, J. (*after stating the facts*). 1. It is urged that the court erred in holding that the evidence to maintain adverse possession must be disregarded because the notice was insufficient under the new rule of the court. The court found that there was no adverse possession of 10 years' duration by Hall under any claim; that he did not acquire title under the tax deed of 1888 until October 17, 1893, and less than five years before the commencement of suit. Under these findings it becomes unnecessary to determine the question of the sufficiency of the notice attached to the plea. The testimony as to adverse possession is not returned. The finding of the court, therefore, is conclusive.

2. The tax deed for the years 1869 to 1880 was inadmissible in evidence, and is ineffectual, for the reason that there was no proof of the regularity of the tax proceedings. The law under which the sale took place did not provide that deeds issued thereunder should be *prima facie* evidence of title. *Farmers & Mechanics' Bank* v. *Bronson*, 14 Mich. 361, 373.

The tax deeds for 1882 and 1883 were void, under *Hall* v. *Perry*, 72 Mich. 205 (40 N. W. 324). Counsel for defendant, in their brief, assert that the court erred in holding that the tax deed for 1882 was void because the sale was made under the law of 1885, and that that law was not retroactive. They state that the deed recites that it was under "Act No. 229 of 1881, as amended by Act No. 7 of 1882." We have examined the deed (a copy of which is not printed, but which is attached to the original record), and we find no such statement in the deed. The only recital in the deed is that the sale was for the delinquent taxes of 1882, and was made October 6, 1885.

The tax deeds for 1887 and 1888 were void, under *Millard* v. *Truax*, 99 Mich. 157 (58 N. W. 70).

3. The recitals in the three documents executed in 1846 (one of which was the power of attorney to Dana, another the deed from the survivors to Allsop, and the third the order of the court vacating the plat of North St. Joseph) are the sole evidence of the death of Sterne. These are ancient documents. 2 Jones, Ev. § 312. Recitals in ancient deeds are proof of the facts therein recited, even as against strangers. Underh. Ev. §§ 53, 54; *Deery* v. *Cray*, 5 Wall. 795; *Fulkerson* v. *Holmes*, 117 U. S. 389 (6 Sup. Ct. 780); *Jackson* v. *Cooley*, 8 Johns. 128; *Bowser* v. *Cravener*, 56 Pa. St. 142; *Chamblee* v. *Tarbox*, 27 Tex. 139. The authorities cited by counsel for defendant are not cases of ancient documents.

4. The power of attorney contains the words, "excepting therefrom such lots as may have been heretofore conveyed." Counsel for defendant insist that plaintiff should have shown what lots, if any, were conveyed. The power of attorney does not state that any lots were conveyed. By introducing his deeds covering the entire land, plaintiff made a *prima facie* case of ownership. If any land had been sold by his grantors, the *onus probandi* was upon the defense to show it.

5. Joint tenancy is not created by operation of law, but by the specific act of the parties. 2 Rice, Mod. Law Real

Prop. § 420. The deed from Dyson to the five trustees expressly stated that they were to hold "as joint tenants, and not as tenants in common." Under the declaration of trust, executed simultaneously with the deed, and the articles of association, which are given in full in the instrument, the five trustees hold this land in trust for the association, the proceeds of the sale to be divided among the shareholders in proportion to their holdings. Counsel for defendant contend that, reading the instrument as a whole, it was not intended to confer power to sell upon four trustees in the event of the death of one. It is true that the declaration provides for the appointment of a successor in the event of the death of one of their number. We, however, do not think that this takes away the right of survivorship which exists at the common law. Survivorship is the distinguishing attribute of joint tenancy, and has been generally abrogated by statute, except in the case of joint trustees. 2 Rice, Mod. Law Real Prop., *supra;* 1 Perry, Trusts, § 343. The intent, therefore, to avoid the rule of survivorship, must clearly appear in the instrument itself. Besides, these defendants are not in position to raise the question. They are not *cestuis que trustent*, who alone can interfere. As long as they are satisfied with the action of their trustees in selling the property, other parties cannot object. 1 Perry, Trusts, *supra.*

Judgment is affirmed.

The other Justices concurred.