## GOODMAN v. FANGERT.

1. VENDOR AND PURCHASER—NOTICE—EJECTMENT.

Open, exclusive possession of an L-shaped wing of a garage extending upon premises purchased by plaintiffs was notice of the occupants' rights, whatever they might be or from whatever source derived.

2. SAME—LEASE—QUESTION FOR JURY.

Conflicting testimony as to plaintiffs' notice of the existence of a lease under which the occupants of the garage claimed, *held*, to present an issue of fact for the jury.

3. EJECTMENT—PRIMA FACIE CASE—BURDEN OF PROOF.

In ejectment proceedings, where plaintiffs made a *prima facie* case by proof of record title in fee simple, by warranty deed, the burden of proof rested upon defendants to show by what right they were in possession.

4. SAME.

The burden of proof rested upon defendants to establish their rights under a lease and assignment introduced by them, and conflicting testimony as to plaintiffs' knowledge and consent to the assignment raised an issue of fact for the jury.

5. APPEAL AND ERROR—ISSUES—REVIEW.

Although the point that a lease was forfeited because assigned without plaintiffs' consent was first raised in this court, where its validity was challenged by plaintiffs during the trial, it was before the court to construe.

6. SAME—ASSIGNMENTS OF ERROR ON CHARGE—DIRECTED VERDICT.

Under section 14576, 3 Comp. Laws 1915, error may be assigned on the charge without bringing the matter to the attention of the trial judge; direction of a verdict being a charge within the meaning of the statute.

7. TRIAL—DIRECTED VERDICT.

*Held*, a directed verdict not authorized by the record.

Error to Wayne; Webster, J. Submitted October 24, 1918. (Docket No. 69.) Decided December 27, 1918.

Ejectment by Hyman Goodman and another against Herman Fangert and others.   Judgment for defendants on a directed verdict.   Plaintiffs bring error.   Reversed.

*Albert McClatchey,* for appellants.

*Butzel & Butzel* and *John A. Milotte,* for appellee Simons.

*William J. Lehmann,* for appellees Fangert and Kuntz.

STEERE, J.   Plaintiffs, who are husband and wife, brought this action in ejectment to recover from defendants possession of a piece of land 20x30 feet in size, covered by what they term a "little garage."   It is a small portion of the rear end of a property which they purchased on November 12, 1914, from Moses Remer and wife, described as lot 9 and the easterly 27½ feet of lot 10, Meier's subdivision of that part of outlot 37, private claim 182, between Ludden street and Gratiot avenue, Detroit, Michigan.   Their purchase constitutes a piece of land 105.75 feet fronting on Mack avenue by 108.4 feet deep.   The front·is occupied by a brick building consisting of two stores below and four flats above.

Defendant Cora B. Simons is owner of the property on Mack avenue adjoining plaintiffs', upon which is located a garage occupied by defendants Fangert and Kuntz who are her tenants.   This garage was built in 1913 by Albert Rasch, then owner of both her description and plaintiffs'.   A one story wing, or L of this garage, 20x30 feet in size and 14 to 16 feet high, built along the alley, extended upon what is now plaintiffs' property.   The garage was built of concrete building blocks.   This L part was built at the same time as the rest of the building, of the same material and as a part

of it, with no outside doors. The only entrance to it was through the main garage in connection with which it was used as a machine and repair room, having in it a lathe, forge and workbench. Such was the use, the condition and appearance of the garage when the Goodmans purchased their property from Remer who is admitted to have then had a good, merchantable title to the description he sold. Defendants, or some of them, were then in possession of the 20x30 feet in dispute, using it as stated, by claim of right under an unrecorded 99-year lease given by Remer to Rasch from whom he had purchased the land, and assigned by Rasch to Mrs. Simons and her husband, to whose rights she succeeded on his death prior to this suit, which was later recorded and of which they gave special notice as a defense under their plea of the general issue.

The testimony indicates that the parties had before them at the time of the trial a plat of the premises and perhaps certain mentioned contracts or other instruments relating to the property which are omitted from the record, leaving somewhat uncertain the time and details of Rasch's sales of this property. He testified that he "was buying on land contract," and it is indicated he at first sold in the same way. The conveyances to Remer and Simons of their respective purchases are testified to but not set out at length in the record. It is apparently conceded, however, that ultimately through Rasch's rights and efforts they each received deeds conveying good titles. The record does contain as an exhibit the 99-year lease from Remer and wife to Rasch of the 20x30 feet in question for an annual rental of $1 dated, and given as Rasch testified, on July 13, 1914, the same day Remer made his final payment and received a deed of his purchase from the holder of the fee. This lease was acknowledged by Remer and wife on November 30, 1914, and on the

same day assigned by Rasch to Edward S. and Cora B. Simons, husband and wife.

It is stated in defendants' brief that Mrs. Simons acquired the garage property during the early summer of 1914 and has been in possession ever since. This is strenuously denied and it is asserted in plaintiffs' brief that the evidence is conclusive to the contrary, for her deed is dated November 30, 1914, and there never was any claim that she had an interest in the property before that date. Neither• of these conflicting claims find direct support in the record. It does not disclose the date of her deed, or of her contract of purchase, or make plain her right of possession of the garage property before November 30, 1914. As to that Rasch, whose tenants were in possession of the garage from soon after it was built until he sold it, testified, apparently in reference to this disputed 20x30 feet, that he was in possession when the 99-year lease was given and when he assigned whatever rights he had in the premises on November 30, 1914, and says, "Mr. Fangert was in possession of the garage as tenant under me," while the record contains an identified receipt from Remer to E. C. Simons dated July 16, 1914, for one dollar "in full for rental on Mack avenue, as per lease, for one year." Herman Fangert testified that he was occupying the garage under a lease from Mrs. Simons, and that he first went into possession on May 14, 1914, after which time he occupied the garage right along, open and doing business every day up to the time he was testifying, and that he was using every day, as a part of it, the wing or L in question.

Just when he changed landlords is not very clear, but we are not impressed with the urged importance of that question. It is admitted by counsel that both parties rely on Remer's title as a common source, one by deed and the other by lease, while Remer's title

came from or through Rasch who built the garage and was in possession by tenants as owner or lessee until he sold and surrendered his right to Mrs. Simons and her husband, by whose death she acquired his rights before this action was brought. Open, exclusive possession of the property at the time plaintiffs bought was notice of the occupants' rights whatever they might be or from whatever source derived. When plaintiffs bought the property, in November, 1914, and when they brought this action in November, 1916, the tenants in continuous and direct physical possession of the 20x30 feet of land, and their lessors, based their claim of right upon this 99-year lease of which it is claimed possession gave constructive notice.

Upon the trial Goodman's contention and testimony was directed to the proposition that he was an innocent purchaser in good faith without notice, and that he first learned of defendants' adverse claim and possession when an abstract of title obtained by a party to whom he had negotiated a sale of the property disclosed a record of this lease. He admitted he had noticed the little garage was on his lot when he bought but thought "a garage belonged to the house." He also said he thought "they used that for the coal, or anything else" and when asked if there was any door leading from his place into it replied, "I never looked at it," and positively denied Remer's testimony that he pointed it out to Goodman when he purchased, explained that the owner had a 99-year lease of the ground on which it stood and gave to the lawyer who acted for both of them in drawing the papers his lease and contract which were all the papers he had from Rasch. The question of direct notice of the lease, upon which considerable testimony was introduced, was clearly an issue of fact for the jury, but it was shown without dispute that the building was there when plaintiffs purchased, that Goodman then saw it,

that it was built at the same time, as a part of the large garage with a continuous wall of the same material, had no entrance to it from plaintiffs' property and was in possession of occupants of the garage and used by them as a part of the building for the garage business conducted there. Plaintiff admitted the conditions were the same at the time of the trial as they were when he purchased, and the premises were viewed by the court and jury. On submission of the case the court directed a verdict for defendants, saying in part:

"This particular building, in the first place, is such a monstrosity to look at, is so out of the ordinary that it is bound to put one on inquiry by the mere seeing of it. * * * If this man had taken any precaution whatever, made any kind of investigation, he would have discovered that the only entrance was around through the big garage. He would have discovered that the little building on his property was practically a part of the garage, and that it was being used in the garage business * * * but having shut his eyes to all that, and purchased, I think he is bound by it and you will therefore render a verdict that the defendants are not withholding unlawfully the possession of these premises from the plaintiffs."

We find no occasion to disagree with the conclusion of the trial court that as a proposition of law, under Goodman's admissions and the undisputed evidence, he had constructive notice of whatever rights defendants had; but apparently the extent and tenacity with which Goodman and the party to whom he was selling asserted ignorance of the nature of that "monstrosity" on his lot tended to obscure the perspective of other questions involved, for it did not follow from the fact of constructive notice sufficient to put plaintiffs on inquiry as to defendants' rights that the latter were entitled to a directed verdict in their favor. The more serious question involved was, What were those rights

under the proof they offered? Plaintiffs made a *prima facie* case by proof of record title to the property in fee simple by warranty deed, and the burden of proof then rested upon defendants to show by what right they were in possession. They relied upon an assigned 99-year lease from plaintiff's grantor which they introduced in evidence with the assignment attached, showing on the face of those instruments that the lease was acknowledged, assigned and recorded after plaintiffs purchased, and that the lease provided in part as follows:

—"if default shall be made in any of the covenants herein contained, then it shall be lawful for the said party of the first part, certain attorney, heirs, representatives and assigns, to re-enter into, repossess the said premises, and the said party of the second part, and each and every other occupant, to remove and put out. * * *

"Said party of the second part further covenants that he will not assign nor transfer this lease, or sublet said premises, or any part thereof, without the written assent of said party of the first part."

The questions which such provisions raise have several times been discussed and passed upon by this court. *Randall* v. *Chubb*, 46 Mich. 311; *Lewis* v. *Sheldon*, 103 Mich. 102; *Marvin* v. *Hartz*, 130 Mich. 26; *Wray-Austin Mach. Co.* v. *Flower*, 140 Mich. 452; *White* v. *Huber Drug Co.*, 190 Mich. 212.

Defendants sought to show knowledge and consent in writing by proof of a receipt to Mrs. Simons, which is not set out in the record, for one dollar in payment of a year's rent under the lease, signed by Goodman's 16-year-old daughter under his direction as claimed by defendants but denied and repudiated by him, which at most would raise an issue of fact for the jury.

Defendants' answer to the contention that the lease was forfeited and a nullity because assigned without the written consent of plaintiff is that this question

was not called to the attention of the trial court, but that point was first made in counsel's brief in this court and therefore should not be considered under the rulings in *Gleason* v. *Stone,* 200 Mich. 187, and *Ward* v. *Carey,* 200 Mich. 217.

It is true that the testimony aside from proving documentary evidence was mainly devoted to the questions of constructive notice and the nature and time of possession by Rasch and defendants, but the sufficiency of defendants' proofs to establish their right to possession under the lease was denied by plaintiffs' counsel and its validity for that purpose repeatedly challenged during the progress of the trial, not very helpfully, it may be conceded so far as shown, to the court in construing the written lease and assignment which it was broadly declared more than once were "a scheme put up by Remer to defraud these people out of that piece of land;" but the burden of proof as to their claimed rights under this lease and assignment upon which they relied rested upon defendants who introduced them in evidence as the foundation of their claim, and they were before the court to construe under that claim.

The record does not show that either side proffered any requests or asked for a directed verdict. After they had introduced their testimony and rested both parties without comment turned the case over to the court to deal with, so far as disclosed, and following a few remarks to the jury upon the subject of constructive notice the court directed a verdict for defendants. Plaintiffs' assignments of error are against the charge of the court in directing a verdict for defendants, not the rulings of the court during the progress of the trial. Under 3 Comp. Laws 1915, § 14576, error may be assigned on the charge without bringing the matter to the attention of the trial judge. *Totten* v. *Totten,* 172 Mich. 565. The direction of a ver-

dict is a charge within the meaning of the statute. *Parsille* v. *Brown*, 188 Mich. 485.

A directed verdict for defendants was not authorized by this record. The judgment thereon is therefore reversed and a new trial granted, with costs of this court to appellants.

BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. OSTRANDER, C. J., did not sit.