BOEKELOO v KUSCHINSKI

Docket No. 53986. Submitted June 9, 1981, at Grand Rapids.—Decided July 12, 1982. Leave to appeal applied for.

Miles W. Boekeloo and his wife are owners of land in Benzie County which has as its northern boundary the shoreline of Lake Michigan. Thomas F. Kuschinski and others are owners of land of which the western boundary abuts the eastern boundary of the land owned by the Boekeloos and which also has the Lake Michigan shoreline for a northern boundary. The United States government commenced condemnation proceedings in federal court regarding both parcels of land in order to include them within the Sleeping Bear Dunes National Lakeshore. Kuschinski and others filed pleadings in the condemnation proceedings asserting a claim of title to a portion of the land owned by the Boekeloos. Kuschinski and others contend that the law of riparian rights and just apportionment require that the actual shoreline be divided in the same proportion that each government lot bore to the original shoreline as depicted by the meander line on the original government plat and that the parties' common boundary between meander line and shoreline should be a line drawn perpendicular to the shoreline and running from the shoreline to the point at which the eastern boundary of the land owned by the Boekeloos intersects the meander line. The Boekeloos filed suit against Kuschinski and others in Benzie Circuit Court to quiet their title to the portion of land in question. The court, Charles A. Wickens, J., entered judgment for the defendants. The plaintiffs appeal. *Held:*

There is no evidence that any portion of the land in dispute is the result of accretion occurring at any time between the

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 12 Am Jur 2d, Boundaries § 55.
[2] 12 Am Jur 2d, Boundaries § 57.
[3, 6] 12 Am Jur 2d, Boundaries §§ 4, 5, 56.
[4, 8] 12 Am Jur 2d, Boundaries § 29.
[5, 7] 12 Am Jur 2d, Boundaries § 99.
[7] 63 Am Jur 2d, Property §§ 21, 28.
    78 Am Jur 2d, Waters § 426.

time of the original government survey until the present time. The United States patent to the section of land owned by the plaintiffs was sufficient to convey title to all lands within the boundaries of the section at the date of that patent as bounded on the east by a division line running from the southeast corner of said section due north to the water's edge. The defendants have failed to meet their burden of proof that they have a legal claim to the property in dispute. It is the water's edge or shoreline that is the true boundary.

Reversed.

1. BOUNDARIES — ADJOINING LANDS.

A boundary line between adjoining proprietors, unless fixed by agreement, acquiescence, or adverse possession, is to be determined in accordance with the original government survey of the land.

2. BOUNDARIES — ASCERTAINMENT OF BOUNDARIES.

Boundaries of the several sections, half-sections, and quarter-sections of the public lands shall be ascertained in conformity with the following principles: the boundary lines as marked in the surveys by the government officials should be established as the proper boundary lines of the sections or subdivisions for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof; the boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners to the opposite corresponding corners, but in those portions of fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse, Indian boundary line, or other external boundary of such fractional township.

3. BOUNDARIES — BODIES OF WATER.

Generally, where by the original survey and government plat a tract of land appears to have as its boundary a body of water, such body of water is a natural monument, and will constitute the boundary, however distant or variant from the position indicated for it by the meander line, and will control as a call of the survey over either distances or quantity of land designated in the conveyance or on the government plat; where natural objects are called for, the lines of the patent must substantially conform to them at the expense of courses and

distances, and distances may be shortened or lengthened in order to conform the location of the patent to and with the natural objects.

4. BOUNDARIES — BODIES OF WATER.

A purchaser of land abutting a body of water in Michigan takes title to the shoreline regardless of the meander line; all land between the low-water mark and the meander line belongs to the abutting proprietor, holding under an ordinary patent from the federal government or the state.

5. BOUNDARIES — QUIETING TITLE.

A plaintiff in a suit to quiet title to land has the burden of proof and must establish a prima facie case of title; if the plaintiff establishes a prima facie case, the defendant has the burden of proving superior right or title.

6. BOUNDARIES — NATURAL MONUMENTS.

The presumption is that where a description of land contained in a deed or grant without metes and bounds description calls for a natural monument or boundary such as a river or a natural lake, and an actual survey is subsequently run, the monument or boundary as delineated by the survey has so existed in such conformation and has continued unchanged from the date of the original deed or grant.

7. PROPERTY — ACCRETION TO LAND.

A party who seeks to have title in real estate quieted in him on the ground that it is accretion to land to which he has title has the burden of proving the accretion by a preponderance of the evidence.

8. BOUNDARIES — BODIES OF WATER — MEANDER LINES.

Property which lies between a meander line and water's edge acquires no special character which distinguishes it from the remainder of the tract merely by virtue of the survey and establishment of such meander line; and the direction of a boundary line is not changed or deflected merely by intersection with a meander line.

*Rhoades, McKee & Boer,* for plaintiffs.

*Williams, Coulter, Cunningham, Davison & Read,* for defendant.

Before: R. B. BURNS, P.J., and MACKENZIE and
J. R. ERNST,* JJ.

J. R. ERNST, J. This suit was instituted as an
action to quiet title to a triangular parcel of land
located between the shoreline of Lake Michigan
and the meander line established by United States
government survey in 1851. Following a determi-
nation and judgment in favor of defendants, plain-
tiffs appeal. We hear this appeal *de novo, Fara-
baugh v Rhode,* 305 Mich 234; 9 NW2d 562 (1943),
and reverse and remand for entry of judgment in
favor of plaintiffs.

Plaintiffs are the owners of lands including gov-
ernment lots 1 and 2 of fractional section 19 and
defendants are owners of a portion of government
lots 3 and 4 of fractional section 20, all situated in
Benzie County, town 27 north, range 15 west. The
east line of fractional section 19, being also the
west line of fractional section 20, forms the com-
mon boundary between the lands of plaintiffs and
defendants. The shore of Lake Michigan, running
in a northeasterly-southwesterly direction, consti-
tutes the northern boundary of both parcels. The
lands of both parties are unimproved and unoccu-
pied and remain in their natural state.

The present litigation was precipitated by con-
demnation proceedings by the United States gov-
ernment against the adjoining lands of plaintiffs
and defendants for inclusion within the Sleeping
Bear Dunes National Lakeshore. Following com-
mencement of condemnation proceedings against
plaintiffs' fractional section 19 in federal court,
defendants sought leave to intervene, asserting a
claim of title to a portion of said lands.

Plaintiffs contend in this action that they hold

* Circuit judge, sitting on the Court of Appeals by assignment.

clear record title to all of fractional section 19 and that defendants' claim to a portion of that strip of land situate between the meander line and shoreline within fractional section 19 constitutes a cloud on plaintiffs' title.

It is defendants' position that under Michigan law accretions to riparian lands are to be equitably apportioned among the several riparian tracts; that all lands between the meander line (as established by original United States government survey) and the shoreline of Lake Michigan should be deemed to be the result of accretion for purposes of apportionment; that "the law of riparian rights and just apportionment" require the actual shoreline to be divided in the same proportion that each government lot bore to the original shoreline *as depicted by the meander line on the original government plat;* and accordingly that the parties' common boundary between meander line and shoreline should be a line drawn perpendicular to the shoreline and running from the shoreline to the point at which the east line of fractional section 19 intersects the meander line.

This matter was submitted to the trial court without testimony, defendants having adopted plaintiffs' statement of facts set forth in their trial brief. During oral argument, defendants' counsel made the following statements:

"The plaintiffs have interjected into their amended complaint the issue that perhaps we should have to show accretion from the shoreline as it was as of the date of the establishment of the meander line, which was in July of 1851, thereabouts. Our position is, of course, that we have no way of knowing what the shoreline was in 1851. We have no way of knowing what the shoreline was last year in July. The Lake Michigan shoreline fluctuates up and down as a matter of fact, in three or four years, several houses were lost

over there. *So there simply is no way of establishing whether or not there was accretion or not.* By the very fact that the meander line was placed away from the wave and erosion action, is evidence that quite obviously there would have been no survey of the shoreline itself as of that time." (Emphasis added.)

The meander line giving rise to the present controversy was established by survey in July, 1851. Thirty-four years thereafter the United States issued a patent to fractional section 19 dated April 22, 1885 (according to defendants' "Rebuttal Brief" filed in the trial court). The date of issue of the United States patent to defendants' lands does not appear in the present record.

As conceded by defendants, there is simply *no evidence* before this Court that any portion of the land in dispute is the result of accretion occurring at any time between 1851 and the present. We therefore refrain from the temptation to engage in an exhaustive review of those cases discussing the sundry rules to be employed in apportionment of accretions. Suffice it here to take note of certain well-established rules which we deem dispositive of the issue. In *Woodbury v Venia,* 114 Mich 251; 72 NW 189 (1897), it was held that a boundary line between adjoining proprietors, unless fixed by agreement, acquiescence, or adverse possession, is to be determined in accordance with the original government survey.

43 USC 752, originally enacted by congressional act of February 11, 1805, provides that:

"[B]oundaries * * * of the several sections, half-sections, and quarter-sections of the public lands shall be ascertained in conformity with the following principles:

* * *

"Second. The boundary lines, actually run and

marked in the surveys, returned by the Secretary of the Interior or such agency as he may designate, shall be established as the proper boundary lines of the sections, or subdivisions, for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary lines which have not been actually run and marked shall be ascertained, by running straight lines from the established corners to the opposite corresponding corners; but *in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse, Indian boundary line, or other external boundary of such fractional township."* (Emphasis added.)

In *Poch v Urlaub,* 357 Mich 261, 274; 98 NW2d 509 (1959), the Court quoted Clark, On Surveying & Boundaries (2d ed), § 136, p 125 as follows:

" 'The subdivision of fractional sections in a fractional township, where the division line has but one end fixed and certain, is accomplished under a special provision of the statutes. This rule provides that the division line shall run due north, south, east or west, as the case may be, to the watercourse, Indian boundary line, or other external boundary.' "

See also 43 USC 752.

The Court further remarked:

"In 6 Thompson on Real Property, § 3332, p 529, it is said:

" 'As a general rule where by the original survey and government plat a tract of land appears to have as its boundary a body of water, such body of water is a natural monument, and will constitute the boundary, however distant or variant from the position indicated for it by the meander line, and hence will control as a

call of the survey over either distances or quantity of land designated in the conveyance or on the government plat.'

"In 5A Thompson on Real Property, § 2725, p 1158, it is said:

" 'Where natural objects are called for, the lines of the patent must substantially conform to them at the expense of courses and distances, and distances may be shortened or lengthened in order to conform the location of the patent to and with the natural objects called for.' " *Poch,* 275.

The Supreme Court, in the leading Michigan case of *Hilt v Weber,* 252 Mich 198, 204; 233 NW 159 (1930), made the following observations:

"Was the meander line a boundary between land and lake when run? *It is well known that, in innumerable instances, as in that at bar, the meander line was not run at the water's edge in fact.* * * * In *Railroad Co v Schurmeier* (1868), 7 Wall (US) 272, 286, it was pointed out that, by the act of congress providing for the survey, while the straight lines were given the force of boundaries, no mention was made of meander lines in the act; that they were a device of the surveyor for the purpose of reporting the contents of the subdivision and to enable the surveyor general to make a plat required by law. They were run as merely general, not accurate, representations of the shore." (Emphasis added.)

The *Hilt* Court quoted from *Hardin v Jordan,* 140 US 371, 380; 11 S Ct 808; 35 L Ed 428 (1891), as follows:

" 'It has frequently been held, both by the Federal and State courts, that such meander lines are intended for the purpose of bounding and abutting the lands granted upon the waters whose margins are thus meandered; and that *the waters themselves constitute the real boundary.' " Hilt, supra,* 205, emphasis by the Court in *Hilt.*

The Court in *Hilt* also quoted from *State v Lake St Clair Fishing & Shooting Club,* 127 Mich 580, 587, 590; 87 NW 117 (1901), as follows:

"[I]t is the settled law of this State that the purchaser of the abutting land takes title to the shore line, regardless of the meander line. * * *

\* \* \*

"[A]ll land between low-water mark and the meander line belongs to the abutting proprietor, holding under an ordinary patent from the Federal government or State." *Hilt, supra,* 209, emphasis by the Court in *Hilt.*

The foregoing principles compel the conclusion that the United States patent to fractional section 19 was sufficient to convey title to all lands within the boundaries of section 19 at the date of that patent, and particularly as bounded on the east by a division line run *from the southeast corner of said section due north to the water's edge.*

A similar result was reached by the Supreme Court of Wisconsin on virtually identical facts in *Menasha Wooden-Ware Co v Lawson,* 70 Wis 600; 36 NW 412 (1888), also citing *Railroad Co v Schurmeier, supra.* There a lot in a fractional township was platted as being bounded on the north by a meandered watercourse, which at the lot's northeast corner ran southwest and whose actual shoreline was about 320.6 feet north of the meander line; the lot being merely described as numbered on the plat. The court held that its east line ran due north until it intersected the actual shoreline, and did not turn at its point of intersection with the meander line; the latter being run, not as a boundary, but merely to determine the number of acres in the lot. The Wisconsin court observed:

"We think the cases in this court, in Minnesota, the

supreme court of the United States, and in other courts, expressly hold that the meander lines made by the government surveyors are not to be considered in determining the actual boundaries of lots which are sold by the government as bounded upon rivers or other navigable waters. The government plats show on their face no meander lines as different from the actual banks or shore of the rivers upon which such lots are described as lying. The purchaser does not know the meander lines, and does not purchase with any regard to them. He purchases a lot bounded on either two or three sides by straight lines, and on the other side by the river as shown upon the plat. We think this was expressly decided in the case of *Schurmeier v St P & P R Co,* 10 Minn 82 (Gil 59) 7 Wall 272, both by the supreme court of Minnesota and the supreme court of the United States. If there had been no meander line in fact run, then there could be no pretense of contention that the west line of lot 1, which is also the east line of lot 2, did not extend in a straight line to the bank or shore of the river. If, therefore, the actual meander line is no part of the actual boundary of the lot purchased from the government, it would seem to have no efficacy in changing the direction of the actual boundary lines of the lots in its course to the river." *Menasha, supra,* 606.

After further discussion of the authorities, the Wisconsin court concluded:

"The foregoing cases we think clearly establish the rule that on all sales of land by the United States, of lots which are platted as bounded by a river, the purchaser takes to the shore or bank of the river, and the meander line, not being a boundary or in any way referred to as such in the conveyance, cannot have any effect in giving direction to the lines of the lot as designated on the government plat." *Menasha, supra,* 608.

In accordance with the general rule, plaintiffs have the burden of proof and must make out a prima facie case of title. *Calhoun v Calhoun,* 361

Mich 698; 106 NW2d 158 (1960), *Fisk v State Savings Bank of Ann Arbor,* 225 Mich 580; 196 NW 342 (1923), *Prentis v Prentis,* 189 Mich 1; 155 NW 473 (1915). If plaintiffs make out a prima facie case defendants then have the burden of proving superior right or title in themselves. *Goodman v Fangert,* 204 Mich 66; 170 NW 29 (1918), *Norris v Hall,* 124 Mich 170; 82 NW 832 (1900).

Here plaintiffs have established in themselves record title to those parcels of land which comprise section 19, which includes the parcel in dispute. The burden of proof then devolves upon defendants to demonstrate a basis of claim to the parcel in dispute superior to the rights of plaintiffs.

The locality of a meandered shoreline at the time of the government survey purely is a question of fact. *Menasha, supra.* Defendants have conceded that they have no evidence as to the location of the shoreline at the time of government survey or date of United States patent. Moreover, defendants cite no authority in support of the proposition that land situated between a shoreline and meander line is presumed to be the product of accretion. Those authorities which we have discovered are to the contrary:

"The burden of establishing a change in the boundary of property is on the claimant, and so the burden of proof is on the one alleging that the location of the line has been changed by the action of the forces of nature." 11 CJS, Boundaries, § 104, p 698. (Footnotes omitted.)

"[T]he presumption [is] that, where a description of lands contained in a deed or grant without metes and bounds description calls for a natural monument or boundary such as a river or a natural lake, and an actual survey is subsequently run, the monument or boundary as delineated by the survey has so existed in such conformation and has continued unchanged from

the date of the original deed or grant." *Normanoch Ass'n, Inc v Baldasanno,* 40 NJ 113, 129; 190 A2d 852 (1963).

"The burden of proof in an action involving an issue of accretion or avulsion depends primarily on the nature of the underlying action. Thus, in an action to quiet title to land that the claimant alleges was added to his land by accretion, the claimant has the burden of proving the allegations of his claim, and therefore must establish not only that the land in question was formed by accretion, but also that it was added to the claimant's land by that process." 21 Am Jur Proof of Facts 2d, Change in Shoreline, § 22, p 217.

"Common experience suggests that there probably have been changes in this stretch of the Red river since 1821, but they cannot be merely conjectured. The party asserting material changes should carry the burden of proving them, whether they be recent or old." *Oklahoma v Texas,* 260 US 606, 638; 43 S Ct 221; 67 L Ed 428 (1923).

"It is well established that the burden of proving accretion rests with the party claiming the benefit thereof." *Dep't of Natural Resources v Pankratz,* 538 P2d 984, 989 (Alas, 1975).

"A party who seeks to have title in real estate quieted in him on the ground that it is accretion to land to which he has title has the burden of proving the accretion by a preponderance of the evidence." *State v Matzen,* 197 Neb 592 syllabus; 250 NW2d 232 (1977).

Defendants concede that they are unable to show that the present shoreline differs substantially from the shoreline as it existed at the time of the original government survey (1851), at the time of issue of the relevant United States patents (1885), or at any critical time thereafter. Defendants also acknowledge that the meander line was placed "away from the wave and erosion action" which would be present at the actual shoreline. It may reasonably be inferred that a substantial strip of dry land lying between meander line and actual

shoreline has been in continuous existence from the date of original government survey to the present. Consequently, defendants have failed to meet their burden of proof that they have a legal claim to the property in dispute.

The trial court stated in its opinion:

"The question before the court is how to divide up this piece of beach between the northeast corner of the plaintiffs' property, which is also the northwest corner of the defendants' property. If you continue the section line in its approximate northerly direction from the meander line, you will award all of the property in the dispute to the plaintiffs and reduce the lake frontage of the defendants.

"The court feels that the proper method of disposing of this triangular piece of beach which lies outside the meander line must take into consideration equity, and apportion this beach on equitable principles. Therefore a line should be drawn from the meander corner on the shore, which is the mutual corner of both parties, and then turn perpendicular to the water's edge. This is the most equitable principle the court can find for dividing up this piece of shoreline beyond the meander line of both parties, in light of the fact that the boundary line between the parties approaches the shore at such a sharp angle in comparison to the beach, and an order may be so prepared."

But as we have noted, it is the water's edge or shoreline, and not the meander line as actually run on the land, that is the true boundary.

Property which lies between a meander line and water's edge acquires no special character which distinguishes it from the remainder of the tract merely by virtue of the survey and establishment of such meander line. The direction of a boundary line is not changed or deflected merely by intersection with a meander line. To the extent that *Hanson v Rice*, 88 Minn 273; 92 NW 982 (1903), is

not factually distinguishable, we decline to apply its reasoning to the case at bar.

The only rationale for the decision articulated by the trial court was that to continue the section line northerly from the meander line to the shoreline would award all of the property in dispute to plaintiffs and reduce the lake frontage of defendants. The decision of the trial court, however, imposes these very consequences upon plaintiffs. Moreover, there is no showing that the decision of the trial court was necessary to avoid destruction of the littoral or riparian character of defendants' land. If a case should occur where the enforcement of the rule approved in this case would do great injustice to one of two parties, equitable principles appropriate to effect a just result may then be determined. *Cf. Bliss v Kinsey,* 233 So 2d 191 (Fla App, 1970).

Reversed and remanded for entry of judgment in favor of plaintiffs. Costs to plaintiffs.