NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0385n.06

No. 13-2100

FILED

May 22, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ABRAHAM ELSHEICK, )
)
    Plaintiff-Appellant, )
)
v. )
) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
SELECT PORTFOLIO SERVICING, INC.; ) EASTERN DISTRICT OF MICHIGAN
PNC BANK, N.A., )
)
    Defendants-Appellees. )
)

BEFORE: DAUGHTREY, SUTTON, and DONALD, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Since the fall of 2008, millions of Americans, and tens of thousands of Michiganders, have lost their homes in foreclosure proceedings due, in large part, to years of questionable banking practices and inadequate regulation of the banking industry. In yet another of the many cases spawned by the effects of that home-foreclosure crisis in Michigan, plaintiff Abraham Elsheick seeks to overturn a decision by the district court that dismissed Elsheick's complaint against defendants Select Portfolio Servicing, Inc., and PNC Bank, N.A. In his complaint, Elsheick sought to set aside a foreclosure-by-advertisement sale of his property in Dearborn Heights, Michigan, that was initiated by the defendants. On appeal, Elsheick raises a single issue: whether the district court erred in determining that he "lacked standing to challenge defects in a foreclosure by advertisement proceeding by holding over 'after expiration of the redemption period.'" For the reasons discussed, we conclude that the district court did in fact err by ruling that Elsheick

lacked standing to bring his claims. However, because Elsheick failed to state a plausible claim that he was prejudiced by fraud or irregularity in the foreclosure-by-advertisement proceedings, we cannot excuse his failure to contest that foreclosure during the statutory redemption period. We thus affirm the judgment of the district court dismissing Elsheick's complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2006, Abraham Elsheick obtained a $262,400 mortgage from First Franklin Bank.[1] That mortgage was secured by transference to Mortgage Electronic Registration Systems, Inc., a nominee for First Franklin and the bank's successors and assigns, of an interest in a $328,000 home purchased by Elsheick and located at 27130 Doxtator Street in Dearborn Heights, Michigan. Eventually, the mortgage, serviced by defendant Select Portfolio Servicing, was assigned directly to National City Bank.

Unfortunately, Elsheick was unable to make the required mortgage payments in a timely manner and, "sometime in July 2010," he contacted the defendants to arrange what Elsheick hoped would be a "loan modification." However, the resulting agreement with the bank's loan services department was never termed a "loan modification" but, rather, a "Repayment Plan." According to the provisions of that plan, Elsheick agreed to make increased monthly mortgage payments "to bring [the] loan current." In exchange for that promise, the bank agreed to "allow [the] loan to remain delinquent during this plan and [to] forbear from starting or continuing a foreclosure action." But, if Elsheick then failed to remit payments required by the plan, "[a]ny foreclosure action [the bank] may have previously initiated will resume."

---

[1] First Franklin Bank was, at the time of the mortgage transaction, a division of National City Bank. As a result of a subsequent merger, National City Bank became part of PNC Bank, N.A., a wholly owned subsidiary of defendant PNC Financial Services Group, Inc.

By February 2012, Elsheick again had become delinquent in his mortgage payments, and on February 22, 2012, the defendants initiated foreclosure-by-advertisement proceedings by publishing notices of a foreclosure sale of the property and by placing a copy of the notice on the front door of the Doxtator Street dwelling. The actual sale took place one month later, on March 22, 2012, at which time PNC Bank, N.A., purchased the mortgaged property for $305,342.05, subject to the plaintiff's right to redeem the property prior to September 22, 2012.

Elsheick did not redeem the property. Instead, on September 21, 2012, the day prior to the end of the redemption period, he filed the present lawsuit in Wayne County (Michigan) Circuit Court. In his complaint, he alleged that: (1) the defendants engaged in fraud and misrepresentation by stating to him that the repayment plan actually was a loan modification as envisioned by Michigan statutory provisions; (2) the defendants failed to comply with the statutory requirements for conducting a foreclosure-by-advertisement; and (3) he was the rightful owner of the Doxtator property such that the sheriff's deed issued to National City Bank was void and should be set aside.

The defendants removed the action to federal court on diversity grounds and then filed a motion to dismiss the action because Elsheick no longer had legal title to, or an interest in, the property that was the subject of the litigation. The district court agreed with the defendants and dismissed the complaint on standing grounds, leading Elsheick to file this appeal.

**DISCUSSION**

**Standard of Review**

We review *de novo* a district court's grant of a motion to dismiss. *Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). In doing so, we "'accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff.'" *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007)). However, the complaint must consist of more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and will survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" that is, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

**Michigan Foreclosure Procedures**

Foreclosures on Michigan properties may be initiated either through the filing of a complaint in state circuit court (judicial foreclosures), *see* M.C.L.A. §§ 600.3101–600.3185; or by advertisement in accordance with the procedures set forth in M.C.L.A. §§ 600.3201–600.3285 (foreclosures by advertisement). Michigan statutes mandate that foreclosures of mortgages by advertisement comply with certain prerequisites, most notably that the mortgagor be sent a notice informing her or him of the right to request a meeting with a housing counselor who can assist the mortgagor in efforts to obtain a mortgage loan modification. *See* M.C.L.A. §§ 600.3205a(1)(a)–(k). Should the mortgagor be unsuccessful in securing such a modification,

however, the mortgage holder or the mortgage servicer "shall work with the borrower" and "shall use a loan modification program or process" that includes, among other provisions, a targeted "ratio of the borrower's housing-related debt to the borrower's gross income of 38% or less, on an aggregate basis." M.C.L.A. § 600.3205c(1)(a). Significantly, if the borrower and the mortgage holder or mortgage servicer "reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if the borrower abides by the terms of the agreement." M.C.L.A. § 600.3205a(1)(f).

Even if a foreclosure sale occurs, the mortgagor is not without recourse. Within the applicable time limit prescribed by statute—here, six months, see M.C.L.A. § 600.3240(8)—the mortgagor may cause the purchaser's deed to become void by remitting "the sum that was bid for the entire premises sold, with interest from the date of the sale at the interest rate provided for by the mortgage, together with the amount of the sheriff's fee paid by the purchaser . . . ." M.C.L.A. § 600.3240(2). Absent such redemption, however, the sheriff's deed provided to the successful purchaser at the foreclosure sale generally "shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter . . . ." M.C.L.A. § 600.3236.

**Article III Standing**

In this case, Elsheick failed to redeem the property subject to the foreclosure. Even though he filed suit in state court seeking to set aside the foreclosure-by-advertisement proceedings one day short of six months after the sheriff's sale, such invocation of the jurisdiction of the state courts did not serve to toll the statutory redemption period. *See, e.g.,*

*Overton v. Mortg. Elec. Registration Sys., Inc.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) ("Plaintiff's suit did not toll the redemption period."). Thus, the defendants argue, on September 22, 2012, six months from the date of the foreclosure sale, "the mortgagor's 'right, title, and interest in and to the property' [were] extinguished." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (quoting *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942)) (citing M.C.L.A. § 600.3236).

Accepting that argument, the district court concluded that Elsheick's complaint must be dismissed because, absent a legal interest in the Doxtator property, Elsheick had no standing to challenge the foreclosure sale of that property. The decision by the district court relied in large part upon the wording of M.C.L.A. § 600.3236 and upon the rationale expressed in a number of Michigan state-court decisions purporting to interpret that statutory provision. *See Awad v. Gen. Motors Acceptance Corp.*, No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App. Apr. 24, 2012); Overton, 2009 WL 1507342, at *1; *Mission of Love v. Evangelist Hutchinson Ministries*, No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. Apr. 12, 2007). However, as recognized both by other United States district courts in Michigan and by this court, *Awad*, *Overton*, and *Mission of Love* should not be read as Article III standing cases.

It is true that the *Awad*, *Overton*, and *Mission of Love* decisions all discuss the plaintiffs' "standing." Nevertheless, the rulings in each of those cases ultimately rest upon the fact that the plaintiffs in those matters were unable to satisfy evidentiary burdens that would allow them to challenge the foreclosure sales despite the expiration of the statutory redemption period and the vesting of title in the purchaser of the property. For example, the *Awad* court recognized that Michigan law "does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice

*in the absence of a clear showing of fraud, or irregularity*." 2012 WL 1415166, at *2, (emphasis added (quoting *Schulthies v Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)) (internal quotation marks omitted); *see also Overton*, 2009 WL 1507342, at *1 (same). Likewise, in *Mission of Love*, 2007 WL 1094424, at *5, the Michigan Court of Appeals again intimated that plaintiffs who failed to redeem property in a timely manner still could set aside a foreclosure sale, but stated that such a claim must contain an assertion of fraud.[2]

We also have noted that such cases do not necessarily implicate issues of standing. In *El-Seblani v. IndyMac Mortgage Services*, 510 F. App'x 425, 428 (6th Cir. 2013), a case in which Abdullah El-Seblani sought to challenge a foreclosure sale despite failing to redeem the property within the applicable six-month period, we stated that "[t]here is no serious dispute that El-Seblani has Article III standing to contest the foreclosure sale, *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 . . . (2000) (standing is established when there is a 'concrete,' 'particularized,' and 'actual' injury that 'is fairly traceable to the challenged action of' the defendants and capable of being 'redressed by a favorable decision')." Indeed, as expressed in *Langley v. Chase Home Finance, LLC*, No. 1:10-cv-604, 2011 WL 1130926 (W.D. Mich. Mar. 28, 2011):

> Many Defendants suggest the basis for the ruling in *Overton* is a lack of Plaintiff's standing once the redemption period expires, but the Court of Appeals does not actually say this. Nor would it seem like Article III standing could possibly be in doubt. After all, the Plaintiffs in such cases are the last lawful owner and possessor of the property. Moreover, they often remain in continuing possession of the property notwithstanding any Sheriff's sale and expiration of a redemption period. Moreover, Plaintiffs in such cases claim a continuing right to lawful ownership and possession based on defects in the process used by Defendants to divest them of those rights. This certainly seems to satisfy the basic Article III requirement of "injury in fact," as well as any prudential

---

[2] Such fraud, however, must relate to the foreclosure proceedings themselves. "Any fraud in the inducement of the warranty deed was no longer relevant." *Id.*

considerations tied to a "zone of interests" analysis. Indeed, it is hard to imagine a person with a better claim to standing to challenge the process at issue.

*Id.* at *2 n.2; *see also Lamie v. Fed. Home Loan Mortg. Corp.*, No. 1:11-cv-156, 2012 WL 1835243, at *3 (W.D. Mich. May 21, 2012).

Not only did Elsheick establish Article III standing in this case, he also established his standing under Michigan law, which requires only that a litigant identify "a legal cause of action." *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 699 (Mich. 2010). Because "Michigan courts have long held that a mortgagor may challenge the validity of a statutory foreclosure either through 'summary proceedings' in the Michigan courts pursuant to Mich. Comp. Laws § 600.5714, or by filing a separate lawsuit," El-Seblani, 510 F. App'x at 428 (citing *Mfrs. Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich. Ct. App. 1985)), Elsheick has state-law, as well as Article III, standing.

**Merits of Plaintiff's Claims**

"Of course, having standing to bring a claim does not mean you have a valid claim on the merits. That is a different question." *Langley*, 2011 WL 1130926, at *2 n.2. In his complaint, Elsheick advances three causes of action that he asserts should lead to a restoration of his title to the Doxtator property: (1) a claim of fraud and misrepresentation; (2) a claim of violations of Michigan's foreclosure-by-advertisement statutes; and (3) a claim to quiet title and set aside the sheriff's sale of his property. However, despite having standing to raise these allegations, Elsheick has failed to allege sufficient facts to state a claim to relief that would allow a court to draw a reasonable inference that the defendants are liable for the alleged misconduct.

### 1. Claim of Fraud and Misrepresentation

"Michigan's foreclosure-by-advertisement scheme was meant to, at once, impose order on the foreclosure process while still giving security and finality to purchasers of foreclosed properties." *Conlin*, 714 F.3d at 359 (citations omitted). Thus, after the statutory redemption period has expired, courts may examine a plaintiff's effort to set aside the foreclosure sale only where such a plaintiff has made "a clear showing of fraud, or irregularity" that relates to "the foreclosure procedure itself." *Id.* at 359-60 (quoting *Schulthies*, 167 N.W.2d at 785; *El-Seblani*, 510 F. App'x at 429 (citing *Freeman v. Wozniak*, 617 N.W.2d 46, 49 (Mich. Ct. App. 2000))). But even the establishment of such fraud or irregularity is not sufficient, in and of itself, to justify a plaintiff's rescission of a foreclosure sale:

> [P]roving a defect or irregularity in a foreclosure proceeding "[will] result in a foreclosure that is *voidable*, not void *ab initio*." *Kim v. JPMorgan Chase Bank, N.A.*, . . . 825 N.W.2d 329, 337 (Mich. 2012) (initial emphasis added). Consequently, the [plaintiff] also must establish that prejudice resulted from any alleged irregularity to reclaim [his] property. *See id.* "To demonstrate such prejudice, [he] must show that [he] would have been in a better position to preserve [his] interest in the property absent [defendants'] noncompliance with the statute." *Id.*

*Rishoi v. Deutsche Bank Nat'l Trust Co.*, No. 13-1119, 2013 WL 6641237, at *4 (6th Cir. Dec. 17, 2013).

Elsheick runs into both procedural and substantive stumbling blocks in his effort to set aside the sale of his property based upon allegations of the defendants' fraud in misrepresenting to him that he had entered into a loan modification agreement that would protect his possessory interest in his home. First, pursuant to the provisions of Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "We have . . . interpreted Rule 9(b) to require that a plaintiff

'allege *the time, place, and content* of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Sanderson v. HCA–The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (emphasis added) (citations omitted). Stated differently, "[a]t a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citation omitted).

Elsheick has failed to satisfy this heightened pleading requirement. Instead, his complaint stated broadly "[t]hat the Defendants intentionally or unintentionally[,] without regard for the truth of the matter[,] misrepresent[ed] to the Plaintiff that he had been approved for a loan modification as that term is defined in MCL 600.3205c." Such an allegation does not identify the exact speaker, the precise statement made, or the date when and the place where the statement was uttered. Thus, Elsheick's allegations of fraudulent misrepresentation fall far short of the specificity required by Rule 9(b).

Even if Elsheick's allegations of fraud had been detailed sufficiently in his complaint, however, he could not have prevailed on the merits of his cause of action because his filing failed to raise a plausible claim for relief. Under established Michigan law, fraudulent misrepresentation requires proof of the following:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567-68 (Mich. 2012) (citations and footnote omitted).

In his complaint, Elsheick contends that the defendants misrepresented to him that he had been approved for a loan modification. In fact, however, the "agreements" between the parties called merely for forbearance of delinquent mortgage payments. It is inconceivable that a reasonable plaintiff could have been misled by the documents offered by the defendants. First, those "agreements" clearly were labeled "Repayment Plan for Loan Number 1044628134" and "Repayment Plan for Loan Number 1044628135" and never mentioned the term "loan modification." Second, the repayment plans specified the amount of each of the monthly payments (ranging from $2,105.24 to $2,944.57) that were required to bring the mortgage back into non-delinquent status. Even Elsheick himself recognized in his complaint that the agreements with the defendants thus called for monthly payments in excess of his prior monthly obligation of $2,076.00 under his original mortgage—hardly evidence of the type of "loan modification" envisioned by the Michigan statutes enacted to provide relief to struggling homeowners. Under such circumstances, Elsheick failed to advance a plausible claim that he had been led to believe the repayment plan was actually a loan-modification agreement that would allow him to remit *lower* monthly mortgage payments.

## 2. Claim of Violation of Michigan's Foreclosure-by-Advertisement Statutes

Elsheick next asserts that the defendants failed to provide him with the notice of foreclosure mandated by the provisions of M.C.L.A. § 600.3205a and, consequently, that they improperly initiated the foreclosure-by-advertisement proceedings without exploring the feasibility of entering into a M.C.L.A. § 600.3205c loan modification agreement. To remedy the

alleged error, Elsheick requests that we set aside the completed foreclosure-by-advertisement proceedings and order the defendants to start anew with an offer of a loan modification.

However, the relief Elsheick seeks is not available to remedy the violation he alleged. Subsection (8) of M.C.L.A. § 600.3205c identifies the exclusive remedy for a defendant's failure to comply with the loan-modification process outlined in the Michigan statutes. That subsection provides, "If a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated *to convert the foreclosure proceeding to a judicial foreclosure*." M.C.L.A. § 600.3205c(8) (emphasis added). Elsheick did not utilize that exclusive remedy available to him. Thus, any prejudice he suffered was attributable to his own failure to seek the relief once available to him, not to the defendants' actions or inactions. See, e.g., *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012) (M.C.L.A. § 600.3205c "allows plaintiffs to enjoin a foreclosure by advertisement and convert it to a judicial foreclosure[;] they brought this action after the foreclosure sale occurred, and so there is no foreclosure to enjoin or convert"); *see also Kim*, 825 N.W.2d at 337 (showing of prejudice required to set aside foreclosure sale).

As a holdover mortgagor, Elsheick possessed the standing necessary to challenge the alleged failure of the defendants to comply with the requirements of Michigan's foreclosure-by-advertisement statutes. His failure to avail himself of the exclusive avenue for doing so, however, means that he cannot state a plausible claim to relief on this issue. The district court thus properly dismissed this second cause of action as well.

### 3. Claim to Quiet Title

Finally, Elsheick also failed to advance a plausible quiet-title claim. In Michigan, plaintiffs in quiet-title actions "have the burden of proof and *must make out a prima facie case of title*." *Boekeloo v. Kuschinski*, 324 N.W.2d 104, 108 (Mich. Ct. App. 1982) (emphasis added) (citations omitted). Elsheick cannot do so in this matter. Once the statutory redemption period lapsed without Elsheick redeeming the Doxtator property, all title to that realty vested in the foreclosure-sale purchaser. *See* M.C.L.A. § 600.3236. Moreover, to the extent that Elsheick's effort to quiet title is intertwined with his allegation that the defendants fraudulently misrepresented the nature of the forbearance agreements he signed, he remains without hope of recovery on this claim. Because he failed to make "a clear showing of fraud, or irregularity" in the foreclosure proceedings, or even to plead fraud with sufficient particularity, see Fed. R. Civ. P. 9(b), no equitable extension of the redemption period was possible, and Elsheick was left without any legal claim to the property on which to base his quiet-title cause of action. *See Smith*, 485 F. App'x at 754.

### CONCLUSION

Although the district court erred in analyzing this matter as a standing case, Elsheick failed to state a claim for relief that is plausible on its face – by failing to satisfy the relevant pleading requirements, by not availing himself of the exclusive remedy provided by statute, and by failing to point to prejudice suffered as a result of any action or inaction on the part of the defendants. We thus AFFIRM the judgment of the district court, although on grounds different from those expressed in the district court's opinion and order.