**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a1045n.06**

**No. 12-2627**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **ROBERT GOSS, Jr.,** | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **FILED** |
| | ) | Dec 20, 2013 |
| **v.** | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| **ABN AMRO MORTGAGE GROUP, et al.,** | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| **Defendants-Appellees.** | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |

**Before: MOORE, GIBBONS, and SUTTON, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Robert Lee Goss, Jr. appeals the district court's

dismissal of his complaint for failure to state a claim upon which relief can be granted. For the

reasons set forth below, we affirm.

I.

On July 28, 2005, Goss executed a mortgage loan in the amount of $208,900.00 from ABN

AMRO Mortgage Group, Inc. ("ABN"). As security for the mortgage loan, Goss executed a

promissory note in favor of ABN, secured by a mortgage on real property located at 6263 Malvern,

Troy, Michigan, 48098. The mortgage provided:

> Lender may accept any payment or partial payment insufficient to bring the Loan
> current, without waiver of any rights hereunder or prejudice to its rights to refuse
> such payment or partial payments in the future, but Lender is not obligated to apply
> such payments at the time such payments are accepted.

The mortgage was subsequently serviced by CitiMortgage, Inc. ("CMI").

Goss lost his job with an automobile company and fell behind in his mortgage payments. Goss contacted CMI to seek a loan modification under CMI's Home Affordable Modification Trial Program Period Plan ("TPP"). CMI sent Goss a TPP document—"Step One of Two-Step Documentation Process"—which provided:

> I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. The Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

Goss signed the TPP on August 10, 2009; however, CMI never signed the TPP. While the modification plan was under review, CMI accepted twenty-two payments from Goss for the monthly payment amount set forth in the TPP. Then, on April 1, 2011, CMI returned a payment for the TPP payment amount "because it was less than the full amount due to bring [Goss's] account current." CMI determined that Goss did not qualify for a modification and proceeded with foreclosure. On June 20, 2011, Trott & Trott (Trott), debt collection agents of CMI, sent Goss a letter informing him of the status of his indebtedness. Goss, through counsel, made a formal request "to engage in mandatory loss mitigation options . . . pursuant to MCL 600.3205, including an in-person meeting." Goss was not afforded an in-person mediation, but rather received a notice of foreclosure from Trott on September 23, 2011. On October 25, 2011, the mortgaged property was sold at a sheriff's sale at the Oakland County Circuit courthouse. The redemption period expired on April 25, 2012. After the sheriff's sale, Goss—believing that there was an error given the previous twenty-two payments he made for the amount in the TPP—made two further payments for that amount in November and December 2011. CMI accepted these payments.

Goss filed a complaint against ABN and CMI on February 2, 2012, in Michigan state court alleging: that defendants lacked standing and the state court lacked subject-matter jurisdiction to enforce the foreclosure because the subject loan was securitized after origination (Count I); that ABN defrauded the court by violating Michigan's recording statutes, Mich. Comp. Laws §§ 565.25 and 600.2907a, and wrongfully initiating foreclosure without proper standing to foreclose on the mortgage (Count II); that Goss had a right to quiet title (Count III); that ABN committed a fraudulent conveyance in violation of Mich. Comp. Laws § 565.371 (Count IV); that CMI breached the contract under the TPP (Count V); that, under promissory estoppel, the court should grant injunctive relief—to wit, declaring the sheriff's sale void, enjoining summary proceedings, enforcing the TPP, and demanding an issuance of a permanent modification (Count VI); that CMI violated Mich. Comp. Laws § 600.3205 by failing to adhere to required conditions before proceeding with foreclosure (Count VII); and that CMI owed Goss a duty of good faith in servicing Goss's loan, breached that duty, and caused Goss to suffer damages such as "the improper default of his mortgage loan, foreclosure on his home and pain and suffering" (Count VIII).

CMI removed the case to federal district court and filed a motion to dismiss. Goss filed a response, and CMI filed a reply. The district court found oral argument unnecessary, resolved the motion on the briefs, and granted CMI's motion to dismiss on November 29, 2012. The district court's opinion and order is entitled "Opinion and Order Granting Defendants' Motion for Summary Judgment"; however, CMI's dispositive motion was a motion to dismiss, and the district court "GRANT[ED] Defendants' Motion to Dismiss" and made its determination under Fed. R. Civ. P. 12(b)(6).

Goss timely filed a notice of appeal.

II.

We review *de novo* a district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013). Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." "In assessing a motion to dismiss under Rule 12(b)(6), this court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (alteration in original). "A plaintiff's complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Courts are not required to accept as true legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alterations in original).

Goss's complaint raises state-law claims, and CMI removed the action to federal court on the basis of diversity of citizenship. We therefore apply the substantive law of Michigan and federal procedural law. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie*

*R. Co. v. Tompkins,* 304 U.S. 64 (1938)). In applying Michigan law, we "must 'follow the decisions of the state's highest court when that court has addressed the relevant issue.'" *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (quoting *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000)).

On appeal to this court, Goss has forfeited his claims that defendants lacked standing and that the state court lacked subject-matter jurisdiction to enforce the foreclosure because the subject loan was securitized after origination (Count I); that ABN committed a fraudulent conveyance in violation of Mich. Comp. Laws § 565.371 (Count IV); and that CMI breached a duty of good faith, causing Goss's damages (Count VIII). "Federal Rule of Appellate Procedure 28(a) requires that an appellant's brief include 'a statement of the issues presented for review,' and '[a]n argument' on each issue presented." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005) (quoting *Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir. 1996)) (alteration in original). "'An appellant waives an issue when he fails to present it in his initial briefs before this court.'" *Id.* (quoting *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003)). Because Goss does not present or argue the claims set forth in Counts I, IV, and VIII of the complaint, he forfeits them on appeal.

A.

In Count V of the complaint, Goss claimed that CMI breached the contract under the TPP. In Count VI, Goss claimed promissory estoppel and requested injunctive relief. The district court rejected Goss's breach of contract claim, citing *Voydanoff v. Select Portfolio Servicing, Inc.*, No. 298098, 2011 WL 6757841 (Mich. Ct. App. Dec. 22, 2011), and further held that Goss's claims for

both breach of contract and promissory estoppel are foreclosed by the statute of frauds, Mich. Comp. Laws § 566.132.

The TPP is not a binding contract because it was not signed by both Goss and CMI. In Michigan, a loan modification proposal "d[oes] not ripen into a binding agreement" if the modification agreement bears the signature of the borrower but not the lender because such a proposal "does not objectively reflect a meeting of the minds regarding the essential modification terms." *Voydanoff*, 2011 WL 6757841, at *7 (citing *Kloian v. Domino's Pizza, LLC*, 733 N.W.2d 766, 770–71 (Mich. Ct. App. 2006) (stating that "a contract requires mutual assent or a meeting of the minds on all the essential terms" and that "[a] meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts") (internal quotation marks omitted)). In *Voydanoff*, the Michigan Court of Appeals rejected the plaintiff's breach of loan modification agreement claim because the agreement at issue bore only the plaintiff's signature. *Id.* The district court held that the same rationale and result apply here. We agree and do not find that Michigan's highest court would differ from this holding. *Cf. City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005) ("[I]f the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning . . .") (alteration in original) (internal quotation marks omitted); *Modern Globe, Inc. v. 1425 Lake Drive Corp.*, 66 N.W.2d 92, 94 (Mich. 1954) (*en banc*) ("Considering that the offer made by defendant's agent was conditional upon ratification by defendant's stockholders and that plaintiff, by its agents . . . , had notice of this fact, the proposed acceptance by [an agent] could not create an enforceable contract until fulfillment of the condition.").

This result is consistent with our previous decisions. In *Hall v. Green Tree Servicing, LLC*, No. 12-1934, slip op. (6th Cir. May 16, 2013), we distinguished a mortgage-modification agreement from a Trial Period Plan. *See id.* at *3. In *Hall*, the court held that the district court did not err in dismissing Hall's breach of contract claim because "the district court correctly concluded that the TPP that Hall submitted was not a binding contract." *Id.* The panel reasoned that "[a]lthough Hall alleged that he signed the TPP and tendered payment, the TPP was not signed by a representative from either defendant." *Id.* at *3–*4. Several federal district courts have also reached the same conclusion that trial period plan proposals are not binding modification contracts unless signed by both the borrower and lender. *See, e.g.*, *Fed. Home Loan Mortg. Corp. v. Hassell*, No. 11-14564, 2013 WL 823241, at *6 (E.D. Mich. Mar. 6, 2013) ("Neither the Trial Plan nor the Partial Reinstatement Agreement unconditionally promises Plaintiff that her loan would be modified and neither document is signed by Wells Fargo.")

Goss adverts to *Bolone v. Wells Fargo Home Mortg., Inc.*, 858 F. Supp. 2d 825 (E.D. Mich. 2012), *Darcy v. CitiFinancial Inc.*, No. 10-848, 2011 WL 3758805 (W.D. Mich. Aug. 25, 2011), and *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012), for the proposition that a trial modification agreement constitutes a contract. These decisions do not bind our determination, and *Bolone* and *Wigod* are distinguishable because the lender signed the Trial Period Plan at issue. *See Wigod*, 673 F.3d at 558 ("Wells Fargo then executed the TPP Agreement and sent a copy to [the borrower]"); *Bolone*, 858 F. Supp. 2d at 828 ("The representative of Wells Fargo also signed the TPP . . . .").

Furthermore, an initial Trial Period Plan document is not necessarily a promise to modify a loan. Courts have refused to read such documents as promises to modify a borrower's loan. *See,*

*e.g.*, *Hassell*, 2013 WL 823241, at \*6; *Brady v. Chase Home Fin., LLC*, No. 11-838, 2012 WL 1900606, at \*7 (W.D. Mich. May 24, 2012) ("[B]ecause the TPP warns the recipient that it 'will not take effect unless and until both [the borrower] and the Lender sign it and Lender provides [the borrower] with a copy of this Plan with the Lender's signature,' no offer is extended until the lender provides the borrower a copy with the lender's signature. By providing an executed copy to the borrower, the lender extends an offer and must provide a modification if the borrower complies with her obligations. Conversely, no offer exists if the lender fails to provide the borrower a signed copy." (alterations in original)); *Helmus v. Chase Home Fin., LLC*, 890 F. Supp. 2d 806, 815 (W.D. Mich. 2012) ("By its plain terms, the TPP makes it clear that it was not an offer, and would not become binding on Chase until the contract was signed and returned to Plaintiffs, which it was not. As a result, there was no offer for Plaintiffs to accept.").

The TPP did not furnish Goss with a promise that CMI would modify his loan. When Goss signed the TPP, he acknowledged that the TPP did not constitute a promise that his mortgage and note would be modified. Rather, the TPP was only an application for an offer to modify the loan agreement, provided certain conditions were met. The TPP that Goss signed provides as follows:

> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage and documents . . . to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer . . . .

The TPP further provided: "This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature." The TPP also provided:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions

required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.

By its plain terms, the TPP made clear that it is not binding until signed by CMI. Construing the document according to its plain meaning, as *Grosse Pointe* instructs, we do not find that the TPP has "ripen[ed] into a binding agreement." *Voydanoff*, 2011 WL 6757841, at \*7. Because the TPP is neither a promise nor a binding contract, Goss cannot make out either his breach of contract claim or his promissory estoppel claim.

The district court further held that Goss's breach of contract claim, as well as his promissory estoppel claim, are foreclosed by the statute of frauds, Mich. Comp. Laws § 566.132. That statute provides:

> (2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
>> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.
>
> (3) As used in subsection (2), "financial institution" means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act, Act No. 173 of the Public Acts of 1987, being sections 445.1651 to 445.1683 of the Michigan Compiled Laws, or Act No. 125 of the Public Acts of 1981, being sections 493.51 to 493.81 of the Michigan Compiled Laws, or an affiliate or subsidiary thereof.

Mich. Comp. Laws § 566.132(2)–(3). As the district court observed, there is no dispute that CMI is a financial institution, and the premise which forms the basis of Goss's promissory estoppel claim

-9-

clearly relates to an alleged promise to modify a loan. Because this alleged promise is not signed with an authorized signature by CMI, the district court correctly concluded Goss's promissory estoppel claim is barred by the statute of frauds.

Goss's citations on appeal to *Kelly-Stehney & Assocs. v. MacDonald's Industrial Products Inc.*, 693 N.W.2d 394, 399 (Mich. Ct. App. 2005), *Gallagher v. BAC Home Loans Servicing, L.P.*, No. 111356, 2012 WL 1952349 (W.D. Mich. May 30, 2012), and *Frost v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d. 999 (W.D. Mich. 2012), do not dislodge this conclusion. *Kelly-Stehney* makes clear that in Michigan "several separate papers and documents, not all of which are signed by the part to be charged, and none of which is a sufficient memorandum in itself" may satisfy the requirements of the statute of frauds. 693 N.W.2d at 399 (internal quotation marks omitted). But, as the *Frost* court found, "[w]hile multiple documents may together be sufficient to satisfy the requirements of the statute of frauds, neither the documents in *Kelly–Stehney* nor the documents in *Gallagher* . . . concerned any question regarding the sufficiency of the signatures therein." *Frost*, 901 F. Supp. 2d at 1007–08. *Frost* concerned a set of documents, "along with the signatures required for Defendant to cash at least six trial period payments by [p]laintffs," that the plaintiffs posited collectively satisfied the statute of frauds. *Id.* at 1007. The *Frost* court reasoned that "although the import to be assigned to the payments Plaintiffs tendered is diminished where Plaintiffs owe Defendant money under the terms of their loan documents, reasonable minds could also infer that the payments are evidence consistent with an agreement between the parties." *Id.* at 1008 (citing *Ennis v. Wells Fargo Bank, N.A.,* No. 10-751, 2011 WL 1118669, at *4 (W.D. Mich. Mar. 25, 2011) (rejecting the plaintiffs-homeowners' argument that "the written offer of a Payment Relief program, coupled with the payment coupons, tied together with proof of timely payments

made, survives any Statute of Frauds argument" (internal alteration and quotation marks omitted))).

Compliance with Michigan's statute of frauds is decided on a case-by-case basis. *Kelly-Stehney*, 693 N.W.2d at 398. And, in this case, the background mortgage agreement suggests that any signatures by CMI required to receive Goss's reduced TPP payments should not be interpreted to satisfy the statute of frauds. *Cf. Ennis*, 2011 WL 1118669, at *4. Goss's mortgage states:

> Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.

Further, the complaint's advertisement to CMI's acceptance of payments, which it was fully entitled to accept, does not specifically advert to any signatures that might satisfy the statute of frauds. Accordingly, the district court properly dismissed Goss's breach of contract and promissory estoppel claims.

B.

In Count II of the complaint, Goss claims that ABN defrauded the court by violating Michigan's recording statutes, Mich. Comp. Laws §§ 565.25 and 600.2907a, and wrongfully initiating foreclosure without proper standing to foreclose on the mortgage. To satisfactorily allege fraud, the complaint must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942–43 (6th Cir. 2009) (quoting *Frank v. Dana*, 547 F.3d 564, 569–70 (6th Cir. 2008)). Further, a plaintiff must allege, at minimum, "'the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the

-11-

fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). Citing Federal Rule of Civil Procedure 9(b) and *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010), the district court dismissed Goss's fraud count, holding that Goss had not stated with particularity the circumstances constituting the fraud. The district court also held that ABN "had proper standing to foreclose on the property under Mich. Comp. Laws § 600.3204(1)(d), as both the owner of the indebtedness upon its merger with [CMI] and as the original mortgage servicer." *Goss v. ABN AMRO Mortgage Grp., LLC*, 12-11158, 2012 WL 5986783, at *4 (E.D. Mich. Nov. 29, 2012).

On appeal, Goss again alleges a violation of Mich. Comp. Laws § 600.2907a, maintaining that "Appellees[] as identified in the foreclosure and the notice of foreclosure, are improper and do not possess the requisite ownership interest in the indebtedness to effectuate the foreclosure." Mich. Comp. Laws § 600.2907a provides:

> A person who violates section 25 of chapter 65 of the Revised Statutes of 1846, being section 565.25 of the Michigan Compiled Laws, by encumbering property through the recording of a document without lawful cause with the intent to harass or intimidate any person is liable to the owner of the property encumbered
> . . . .

Mich. Comp. Laws § 565.25, in turn, provides:

> (1) Except as otherwise provided in subsection (2), the recording of a levy, attachment, lien, lis pendens, sheriff's certificate, marshal's certificate, or other instrument of encumbrance does not perfect the instrument of encumbrance unless both of the following are found by a court of competent jurisdiction to have accompanied the instrument when it was delivered to the register under section 24(1) of this chapter:
>
>> (a) A full and fair accounting of the facts that support recording of the instrument of encumbrance and supporting documentation, as available.
>> (b) Proof of service that actual notice has been given to the

recorded landowner of the land to which the instrument of encumbrance applies.

Goss's complaint and attached exhibits belie his fraud and wrongful foreclosure claims. In the complaint, Goss alleges that his mortgage was "originated by ABN AMRO Mortgage Group, Inc." and that "[t]he mortgage loan was subsequently serviced by Citimortgage, Inc." The June 20, 2011, letter from Trott to Goss indicates that Trott is the agent of CMI, the creditor to which Goss's debt is owed or the servicing agent for the creditor to which the debt is owed. The Notice of Foreclosure, also issued by Trott, refers to ABN as the original mortgagee. Not only does Goss allege that ABN was the original mortgagee in the complaint, but also it is a requirement of Mich. Comp. Laws § 600.3212 that "[e]very notice of foreclosure by advertisement shall include . . . (a) the names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any."

Moreover, Goss's basic claim—that "Appellees[] as identified in the foreclosure and the notice of foreclosure, are improper and do not possess the requisite ownership interest in the indebtedness to effectuate the foreclosure"—is foreclosed as a matter of law. In *Residential Funding Company, L.L.C. v. Saurman*, 805 N.W.2d 183 (Mich. 2011), the Michigan Supreme Court explained that the "category of parties entitled to foreclose by advertisement indicates the intent to include mortgagees of record . . . along with parties who 'own[] the indebtedness' and parties who act as 'the servicing agent of the mortgage.'" *Id.* at 184 (alteration in original) (quoting Mich. Comp. Laws § 600.3204(1)(d)).

Accordingly, the district court correctly concluded that Count II of the complaint does not "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

C.

-13-

In Count III of the complaint, Goss demanded quiet title. In Michigan, a quiet-title action is governed by Mich. Comp. Laws § 600.2932(1), which states:

> Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

This statute "codifie[s] actions to quiet title and authorizes suits to determine competing parties' respective interests in land." *Republic Bank v. Modular One LLC*, 591 N.W.2d 335, 337 (Mich. Ct. App. 1998), *overruled on other grounds by Stokes v. Millen Roofing Co.*, 649 N.W.2d 371 (Mich. 2002). In an action to quiet title, the plaintiffs have the burden of proof and must make out a *prima facie* case of title. *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'n*, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999) (citing *Stinebaugh v. Bristol*, 347 N.W.2d 219, 221 (Mich. Ct. App. 1984)). If the plaintiffs make out a *prima facie* case, the defendants then have the burden of proving superior right of title in themselves. *Id.* (citing *Boekeloo v. Kuschinski*, 324 N.W.2d 104, 108 (Mich. Ct. App. 1982)). If the defendant cannot carry its burden, then "the defendant shall be ordered to release to the plaintiff all claims thereto." Mich. Comp. Laws § 600.2932(3).

Under Michigan law, "[i]f a mortgagor does not redeem his or her property within the appropriate redemption period, the purchaser of the sheriff's deed is vested with 'all the right, title, and interest' in the property." *Kheder v. Seterus, Inc.*, No. 308227, 2013 WL 1286020, at *9 (Mich. Ct. App. Mar. 28, 2013) (quoting *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942)). "Stated differently, if the mortgagor does not redeem his or her property within the appropriate redemption period, all of the mortgagor's rights in and to the property are

extinguished." *Id.* If a plaintiff wishes to set aside a foreclosure sale, the plaintiff must show that fraud, accident, or mistake occurred. *See Freeman v. Wozniak*, 617 N.W.2d 46, 48–49 (Mich. Ct. App. 2000) (citing *Senters v. Ottawa Sav. Bank*, 503 N.W.2d 639, 643 (Mich. 1993)). "Moreover, the fraud, accident, or mistake must relate to the foreclosure proceeding itself." *Stein v. U.S. Bancorp*, No. 10-14026, 2011 WL 740537, at *6 (E.D. Mich. Feb. 24, 2011).

As discussed above, Goss cannot establish that CMI, as the servicer of the mortgage, improperly foreclosed on his mortgage; accordingly, he cannot make out his fraud claim. And Goss has not alleged any irregularity in the foreclosure process. Accordingly, the district court properly dismissed Goss's quiet-title claim.

### D.

In Count VII, Goss claimed that CMI violated Mich. Comp. Laws § 600.3205a by failing to adhere to that statute's conditions before proceeding with foreclosure. Before amendment by Public Act No. 302 on December 22, 2011, Mich. Comp. Laws § 600.3205a, in pertinent part, provided:

> (1) Subject to subsection (6), before proceeding with a sale under this chapter of property claimed as a principal residence . . . ., the foreclosing party shall serve a written notice on the borrower that contains all of the following information:
>
> > (a) The reasons that the mortgage loan is in default and the amount that is due and owing under the mortgage loan.
> >
> > (b) The names, addresses, and telephone numbers of the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer.
> >
> > (c) A designation of 1 of the persons named in subdivision (b) as the person to contact and that has the authority to make agreements under sections 3205b and 3205c.
> >
> > (d) That enclosed with the notice is a list of housing counselors

prepared by the [MSHDA] and that within 14 days after the notice is sent, the borrower may, either by contacting the person directly or by contacting a housing counselor from the list enclosed with the notice, request a meeting with the person designated under subdivision (c) to attempt to work out a modification of the mortgage loan to avoid foreclosure.

(e) That if the borrower requests a meeting with the person designated under subdivision (c), foreclosure proceedings will not be commenced until 90 days after the date the notice is mailed to the borrower.

(f) That if the borrower and the person designated under subdivision (c) reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if the borrower abides by the terms of the agreement.

(g) That if the borrower and the person designated under subdivision (c) do not agree to modify the mortgage loan but it is determined that the borrower meets criteria for a modification under section 3205c(1) and foreclosure under this chapter is not allowed under section 3205c(7), the foreclosure of the mortgage will proceed before a judge instead of by advertisement.

(h) That the borrower has the right to contact an attorney, and the telephone numbers of the state bar of Michigan's lawyer referral service and of a local legal aid office serving the area in which the property is situated.

Mich. Comp. Laws § 600.3205a (amended by P.A. 2011, No. 302, effective December 22, 2011, and repealed by Mich. Comp. Laws § 600.3205e, effective January 9, 2014); s*ee also Vasilakis v. Trott & Trott P.C.*, No. 306122, 2012 WL 5854363, at *2–*3 (Mich. Ct. App. Nov. 15, 2012) ("The foreclosure by advertisement statutes were amended in 2011.").

Goss's complaint alleges a violation of § 600.3205a(1)(e). On June 23, 2011, Goss made a formal request through his counsel, Vanessa Fluker, "to engage in mandatory loss mitigation options . . . pursuant to Mich. Comp. Laws § 600.3205 et seq." In the complaint, Goss alleges that CMI did not set a meeting with his counsel to negotiate a modification and "proceeded to sheriff's sale before the statutory time period of ninety (90) days."

The district court held that, accepting Goss's factual allegations as true, he could not make out a violation of the Michigan foreclosure-by-advertisement statutes. Mich. Comp. Laws § 600.3205b(1) (2011) provided:

> [a] borrower . . . [that] wishes to participate in negotiations to attempt to work out a modification of a mortgage loan shall contact a housing counselor from the list provided under section 3205a . . . the housing counselor shall inform the person designated under section 3205a(1)(c) in writing of the borrower's request.

*Id.*[1] This statute imposed a duty on Goss if he wished to negotiate a modification agreement. *See Vasilakis*, 2012 WL 5854363, at *4 ("'Shall' is a mandatory term." (citing *Manuel v. Gill*, 753 N.W.2d. 48, 55 (Mich. 2008))). The district court found that Goss did not contact an authorized housing counselor and no housing counselor from the list provided under section 600.3205a contacted CMI or its agent on Goss's behalf within fourteen days after a list was mailed to the borrower. As such, the district court held that the foreclosure sale was conducted pursuant to the foreclosure-by-advertisement statute.

The district court based its conclusion on *Vasilakis*. In *Vasilakis*, the plaintiffs, like Goss, lost their home to foreclosure. *Id.* at *1. The Michigan Court of Appeals held that because plaintiffs "failed to follow the clear procedures delineated in the 2010 version of the foreclosure by advertisement statutes," Mich. Comp. Laws § 600.3204 *et seq.*, the foreclosure sale was valid. *Id.* In *Vasilakis*, the plaintiffs were notified that their mortgage loan was in default. *Id.* Instead of contacting a housing counselor as required by Mich. Comp. Laws § 600.3205b(1), the plaintiffs personally telephoned Trott, who handled the foreclosure, and

---

[1] "The statute was amended in 2011, and now permits a homeowner to personally contact the lender's designated agent to request a loan modification meeting." *Vasilakis*, 2012 WL 5854363, at *4 n.2 (citing Mich. Comp. Laws § 600.3205b(1), as amended by P.A. 2011, No. 302).

retained an attorney, who also contacted Trott. *Id.* The Michigan Court of Appeals found that "[a]ccording to the plain language of the statute, plaintiffs could not request a meeting personally, through a retained attorney or through a retained financial consultant." *Id.* at *4. The court then held that because plaintiffs did not request a meeting through a housing counselor, "defendants were free under Mich. Comp. Laws § 600.3204 to advertise the foreclosure and conduct the sale." *Id.* Following *Vasilakis*, the district court dismissed Goss's claim that CMI violated Mich. Comp. Laws § 600.3205 because Goss did not contact an authorized housing counselor and no housing counselor contacted Trott or CMI on Goss's behalf. By not contacting Trott or CMI through a housing counselor, Goss did not trigger the requirement under Mich. Comp. Laws § 600.3205a(1)(e) that he alleges CMI violated.

On appeal, Goss stresses that Mich. Comp. Laws § 600.3205a(1)(h) provides the borrower with a right to an attorney; that his attorney made a request for loss mitigation options; and that Mich. Comp. Laws § 600.3204(4)(e) provides that "[a] party shall not commence [foreclosure] proceedings . . . if . . . [t]he mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents as required under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter." Goss also points to Mich. Comp. Laws § 600.3205(d)(5), which makes clear that an attorney who is licensed to practice law in the state of Michigan and who provides mortgage assistance relief services as part of his or her practice of law can perform the duties of a housing counselor under Mich. Comp. Laws §§ 3205a–c.

Goss's arguments on appeal are precluded by *Vasilakis*. First, section 600.3205(d)(5) was part of the amendments made by Public Act No. 302 on December 22, 2011, which was after the September 23, 2011, notice of foreclosure and the October 25, 2011, foreclosure sale. The Michigan Court of Appeals decided *Vasilakis* after the amendments made by Public Act No. 302 and did not suggest that section 600.3205(d)(5) has retroactive effect such that an attorney could have performed the duties of a housing counselor before its enactment. *See Vasilakis*, 2012 WL 5854363, at *1–*4. Nor did the court read section 600.3205a(1)(h), which provides the borrower with a right to an attorney, to enable an attorney to perform the role reserved to housing counselors under the statute. *See id.* As such, by contacting Trott through his attorney, Goss did not meet his section 600.3205b(1) obligation to contact Trott through a housing counselor. Hence, the foreclosure sale did not violate Mich. Comp. Laws § 600.3205a(1)(e). There is little reason to believe that the Supreme Court of Michigan would disagree with this result. *See Vasilakis v. Trott & Trott, P.C.*, 836 N.W.2d 165, 165 (Mich. 2013) ("On order of the Court, the application for leave to appeal the November 15, 2012 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.").

Goss made twenty-two payments at the TPP amount hoping that his mortgage would be modified; yet CMI foreclosed on his residence. He reasonably attempted to save his house by retaining an attorney to negotiate a modification. If he, or his attorney, had read the foreclosure-by-advertisement statute, then perhaps he would have contacted Trott through a housing counselor. He did not and was without remedy for the foreclosure. The state of Michigan has since amended its foreclosure-by-advertisement statutes. But the dispositions of the Michigan

-19-

Court of Appeals and the Supreme Court in *Vasilakis* show that Goss does not benefit from those amendments.

Therefore, the district court correctly dismissed Goss's allegation that CMI violated Mich. Comp. Laws § 600.3205.

III.

For the foregoing reasons, we affirm the district court's dismissal of Goss's complaint for failure to state a claim for which relief can be granted.